UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re GENERAL MOTORS CORP. SECURITIES LITIGATION | Master File No. 05-CV-8088 (RMB)<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS |

**MEMORANDUM OF LAW IN OPPOSITION TO THE
MOTION OF THE INSTITUTIONAL INVESTOR GROUP
TO BE APPOINTED LEAD PLAINTIFF**

**MURRAY, FRANK & SAILER LLP**
275 Madison Avenue, 8th Floor
New York, NY 10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 3

   I.    PSLRA Lead Plaintiff Requirements ................................................................... 3

   II.   The Institutional Investor Group's Members Should Be ...............................................
        Considered Individually ........................................................................................ 3

      A.   A Party's Financial Interest Reflects Its Interest in Representing the Class ............... 3

      B.   The Institutional Investor Group Has Not Established ...................................................
          a *Prima Facie* Case that It Can Adequately Represent the Class .................................. 6

      C.   The Institutional Investor Group Is a Prime ...................................................................
          Example of Lawyer Driven Litigation ........................................................................... 8

   III.  Deka Has By Far the Largest Financial Interest ........................................................ 9

CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

## Statutes and Rules

Fed. R. Civ. P. 23 .................................................................................................... 2, 3, 4

Securities Exchange Act of 1934, Section 21 ................................................................ 1

## Cases

*Baker v. MBNA Corp.*,
   No. 05-CV-0272, Dkt. No. 35 (D. Del. 2005) .......................................................... 7

*Barnet v. Elan Corp.*, PLC,
   Case Nos. 05 Civ. 2860 (RJH) and 05 Civ. 3166 (RJH),
   2005 U.S. Dist. LEXIS 16388 (S.D.N.Y. August 8, 2005) ......................... 4, 6, 8, 10

*Bassin v. DeCode Genetics*,
   230 F.R.D. 313 (S.D.N.Y. 2005) ............................................................................. 3

*In re Baan Co. Sec. Litig.*,
   186 F.R.D. 214 (D.D.C. 1999) ................................................................................ 6

*In re BankAmerica Corp. Sec. Litig.*,
   350 F.3d 747 (8th Cir. 2003) .................................................................................... 2

*In re Crawford v. Onyx Software Corp.*,
   Civ. No. C01-1346L, 2002 U.S. Dist. LEXIS 1101 (W.D. Wash. Jan. 10, 2002) .... 3, 5

*In re Donnkenny Inc. Sec. Litig.*,
   171 F.R.D. 156 (S.D.N.Y. 1997) ............................................................................. 7

*In re E.Spire Communications, Inc., Sec. Litig.*,
   Civ. No. H-00-1140, 2000 U.S. Dist. LEXIS 19517 (D. Md. Aug. 15, 2000) ........... 5

*In re eSpeed, Inc. Sec. Litig.*,
   Case No. 05 Civ. 2091 (SAS), 2005 U.S. Dist. LEXIS 14104 (S.D.N.Y. July 13, 2005) ......... 4

*In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427 (E.D. Va. 2000) ................ 6, 7

*In re Network Associates Inc. Sec. Lit.*, 76 F. Supp. 2d 1017 (N.D. Cal. 1999) .......... 6, 7

*In re Pfizer Inc. Sec. Litig.*,
   Case No. 04 Civ. 9866 (RO), 2005 U.S. Dist. LEXIS 24891 (S.D.N.Y. October 21, 2005) ..... 5

*Lax v. First Merchants Acceptance Corp.*,
  1997 U.S. Dist. LEXIS 11866, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) .............................. 9

*Parnes, et al., v. Digital Lightwave, Inc.*,
  Case No. 99 Civ. 11293 (11th Cir. Aug. 25, 1999) ................................................................. 6

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*,
  Case No. 03 Civ. 8264, 2004 U.S. Dist. LEXIS 9571 (S.D.N.Y. May 27, 2004) ..................... 3

*Sakhrani v. Brightpoint, Inc.*,
  78 F. Supp. 2d 845 (S.D. Ind. 1999) ........................................................................................ 6

*See In re Nortel Networks Corp. Sec. Litig.*,
  Case No. 01 Civ. 1855 (RMB), 2002 WL 1492116 (S.D.N.Y. Feb. 4, 2002) ........................... 9

# INTRODUCTION

Deka Investment GmbH and Deka International S.A., Luxembourg ("Deka") respectfully submit this memorandum in opposition to the motion filed by the Institutional Investor Group. Deka requests that it be appointed lead plaintiff in this consolidated securities class action and that its counsel, Murray, Frank & Sailer LLP ("Murray Frank"), be appointed lead counsel.

Deka Investment GmbH and Deka International S.A., Luxembourg are subsidiaries of the same parent company, DekaBank Deutsche Girozentrale, and are in regular communications with each other necessitated by their common ownership and common business interests. Clearly, Deka is not a random cobbling together of movants simply to aggregate losses.

In stark contrast, the Institutional Investor Group consists of four unrelated entities cobbled together by two law firms[1] for the sole purpose of aggregating losses to defeat Deka's lead plaintiff motion. These four unrelated entities have no prior business relationship, no pre-litigation history, and no reason to be joined.

There can be no meaningful dispute that Deka, having suffered the greatest loss – $23.4 million – "has the largest financial interest in the relief sought by the classes." *See* Securities Exchange Act, § 21D(a)(3)(B)(i)(bb). By comparison, the largest of the individual members of the Institutional Investor Group, Mississippi PERS, claims loss of only $12.9 million, while the other three unrelated members have even smaller claimed losses: Erste-Sparinvest KAG – $7 million; Fortis – $4.2 million; and Activest – $4 million.

---

[1] The law firms are Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss") and Chitwood Harley Harness LLP ("Chitwood Harley"). The unrelated institutions are: (i) the Public Employees Retirement System of Mississippi ("Mississippi PERS"); (ii) ERSTE-SPARINVEST Kapitalanlagegesellschaft m.b.H. ("Erste-Sparinvest KAG"); (iii) Fortis Investment Management N.V./S.A. ("Fortis"); and (iv) Activest Investmentgesellschaft mbH ("Activest").

As established in its opening memorandum in support of its motion, Deka otherwise satisfies the requirements of Rule 23 and, as a cohesive lead plaintiff, will adequately protect the interests of the class. To the contrary, the Institutional Investor Group has failed to make a *prima facie* demonstration that it is an adequate group under the PSLRA. The Institutional Investor Group is an attorney-driven artifice cobbled together by two law firms in an effort to maximize counsel's representation of a body, any body, that has the largest financial interest – a financial interest that none of them standing alone has.[2] This attorney-driven artifice has no meaningful relationship among its members and has failed to demonstrate that its members can cohesively, efficiently, and effectively work together. *See In re BankAmerica Corp. Sec. Litig.*, 350 F.3d 747, 751 (8th Cir. 2003) (discussing the problem of "what weight a district court must give to objections from a fraction of a fractured lead plaintiff group").

Because Deka has the largest financial interest in the litigation, is the only movant who otherwise satisfies the requirements of Rule 23, and is capable of adequately protecting the interests of the class, its motion should be granted and the motion of the Institutional Investor Group denied. Appointing Deka Lead Plaintiff further comports with this District's judicial precedent, and will prevent: (a) a dilution of control over the prosecution of the litigation; and (b) unnecessary costs often encountered with larger sized and artificially structured groups, such as the Institutional Investor Group here.

---

[2] Pursuant to the Pretrial Order No. 1 entered November 14, 2005, counsel for each of the movants participated in conference calls in an effort to determine which party met the PSLRA's criteria for the appointment of lead plaintiff. During these calls, counsel shared financial data concerning the financial interest of each of the movants on an individual basis.

## ARGUMENT

I.  **PSLRA Lead Plaintiff Requirements**

The PSLRA requires a court to consider any motion made by a class member and appoint as lead plaintiff that class member the court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA sets forth the rebuttable presumption that the "most adequate plaintiff" is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). *See generally Bassin v. DeCode Genetics*, 230 F.R.D. 313 (S.D.N.Y. 2005) (Holwell, J.); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, Case No. 03 Civ. 8264, 2004 U.S. Dist. LEXIS 9571, at *17-23 (S.D.N.Y. May 27, 2004) (Sweet, J.).

II.  **The Institutional Investor Group's Members Should Be Considered Individually**

The first question to be answered about the Institutional Investor Group is whether a group of four utterly unrelated institutions cobbled together by two law firms for the sole purpose of making a lead plaintiff motion is a proper group under the PSLRA, thereby allowing for aggregation of the individual member's losses. It is not.

    A.  **A Party's Financial Interest Reflects Its Interest in Representing the Class**

The PSLRA's underlying philosophy is that a party's own financial interest reflects the intensity of interest of that party in representing the best interest of the class. It is axiomatic that an entity's financial interest is not made greater simply through joinder with other parties. *See In*

3

re *Crawford v. Onyx Software Corp.*, Civ. No. C01-1346L, 2002 U.S. Dist. LEXIS 1101, at *4-5 (W.D. Wash. Jan. 10, 2002) (the court refused to examine the aggregate losses of a group comprised of unrelated individuals, finding that such a "loose group" has "no real cohesiveness" and, therefore, consideration of the aggregate losses of a group is "not convincing in light of the purposes of the PSLRA.").

Surprisingly, the Institutional Investor Group relies on a July 2005, Southern District of New York decision to support its contention that a group of unrelated persons can aggregate its losses. *See* Institutional Investor Group Opening Memorandum at 4. That case, *In re eSpeed, Inc. Sec. Litig.*, Case No. 05 Civ. 2091 (SAS), 2005 U.S. Dist. LEXIS 14104 (S.D.N.Y. July 13, 2005) (Scheindlin, J.), holds precisely the opposite. While the *eSpeed* court does appoint a five person group as lead plaintiff over a single individual institution, it goes to great length to point out that the group is a <u>family</u>. Indeed, the group moved with a non-family member, Weber, which the court explicitly excluded during its analysis.

> The appropriateness of the Adib Group to serve as lead plaintiff therefore hinges on a comparison between the losses of the Adib Family, Weber, and the Pension Fund. If the Adib family has greater losses than the Pension Fund even without Weber, then Weber may be included in the group and, subject to a determination that the Adib Group meets the requirements of Rule 23(a), the Adib Group will be named the presumptive lead plaintiff. <u>If the Adib family is dependent upon Weber's losses to establish aggregate losses greater than the Pension Fund's, then Weber will not be considered as part of the Adib Group, and the Pension Fund will be named presumptive lead plaintiff, assuming it can satisfy the requirements of Rule 23(a).</u>

*Id.*, at *12-13 (emphasis added).

In August 2005, another Southern District of New York court refused to aggregate losses for unrelated institutions cobbled together for lead plaintiff appointment purposes. In *Barnet v. Elan Corp.*, PLC, Case Nos. 05 Civ. 2860 (RJH) and 05 Civ. 3166 (RJH), 2005 U.S. Dist. LEXIS 16388 (S.D.N.Y. August 8, 2005) (Holwell, J.), the court analyzed the situation where competing lead plaintiff motions were made by two groups of unrelated individuals and entities,

4

and another motion made by an individual investor. One of the groups (also called the "Institutional Investor Group," and also with Milberg Weiss as one of its two counsel) consisting of six unrelated entities was selected as lead plaintiff, after the court refused to aggregate the group's losses. Two of the "Institutional Investor Group" members had the greatest financial interest of the other movants, calculating losses in any of three ways; another "Institutional Investor Group" member had the greatest financial interest using a fourth financial interest calculation methodology. *Id.*, at *14-15. The court immediately thereafter stated the following:

> This is simply not a case where a group of unrelated investors has been cobbled together as a "group" to displace a single competing institutional investor, or a smaller, closely-related group of investors. If it were, the Court would be reluctant to recognize the group under the statute.

*Id.,* at *15.

In October 2005, yet another Southern District of New York court rejected aggregation of losses by unrelated lead plaintiff applicants. In *In re Pfizer Inc. Sec. Litig.*, Case No. 04 Civ. 9866 (RO), 2005 U.S. Dist. LEXIS 24891, at *6 (S.D.N.Y. October 21, 2005) (Owen, J.), the Court rejected such aggregation simply and directly:

> Several of the putative plaintiffs are aggregated into artificial "groups." Nothing before the Court indicates that this aggregation is anything other than an attempt to create the highest possible "financial interest" figure under the PSLRA. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), and I reject it. I will consider each potential lead plaintiff individually, and not as artificially grouped by its attorneys.

Numerous other courts agree and have held that where a group of individuals with no prelitigation relationship have been aggregated for the purpose of demonstrating their financial interest, the court should determine the movant with the largest financial interest only by examining each movant on an individual, not aggregate, basis. S*ee Crawford*, 2002 U.S. Dist. LEXIS 1101, at *4-5 (the court refused to consider the aggregate losses of a group comprised of unrelated individuals and determined movant with the largest financial interest by examining the

5

parties individually); *In re E.Spire Communications, Inc., Sec. Litig.*, Civ. No. H-00-1140, 2000 U.S. Dist. LEXIS 19517, at *18-24 (D. Md. Aug. 15, 2000) (declining to consider aggregated losses of the group, the court appointed the individual investor who suffered the largest individual loss); *Sakhrani v. Brightpoint, Inc.*, 78 F. Supp. 2d 845, 847 (S.D. Ind. 1999) (holding that appointment of "artificial group of persons as lead plaintiffs should be rare under the PSLRA"); *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 224 (D.D.C. 1999) (quoting SEC amicus brief: "Each proposed member of a[n unaffiliated] 'group' should be evaluated separately, and the marginal benefit of including another member in the group weighed against the further division of decision making authority and the attendant problems that enlargement of the group entails.").

The Institutional Investor Group is just as Judge Holwell feared – "a group of unrelated investors [] cobbled together as a 'group' to displace a single competing institutional investor," *Barnet v. Elan Corp.*, 2005 U.S. Dist. LEXIS 16388, at *15, and rejected over the past five months by three Southern District courts. This Court should follow this precedent and reject the Institutional Investor Group's motion.

**B.    The Institutional Investor Group Has Not Established a *Prima Facie* Case that It Can Adequately Represent the Class**

The Institutional Investor Group has failed to make a *prima facie* showing that it is an adequate group under the PSLRA and can adequately represent the class. Even where courts have considered appointing a group as lead plaintiff, they have required a heightened showing by the group of the value of the additional lead plaintiff parties and how the group will effectively and efficiently manage the litigation. *See In re Network Associates Inc. Sec. Lit.*, 76 F. Supp. 2d 1017, 1026 (N.D. Cal. 1999) (in determining the adequacy of a group to be lead plaintiff the group must "explain and justify its composition and structure to the court's satisfaction") (quoting SEC amicus brief filed in *Parnes, et al., v. Digital Lightwave, Inc., Case* No. 99 Civ.

11293 (11th Cir. Aug. 25, 1999)); *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 434-35 (E.D. Va. 2000) (considering factors of the group including "descriptions of [the group's] members, including any pre-existing relationships among them; an explanation of how its members would function collectively; and a description of the mechanism that its members and the proposed lead counsel have established to communicate with one another about the litigation.") (citing *In re Network Associates Inc. Sec. Litig.*, 76 F. Supp. 2d at 1026)).

The Institutional Investor Group has not provided any information that would allow this Court to conclude that it is an adequate lead plaintiff. Indeed, the Institutional Investor Group's submissions are based solely on perfunctory certification forms, which lack any information about the background or preexisting relationships between its group members and the law firms it chose to be co-lead counsel, information as to how it will cohesively act to effectively and efficiently serve as an aggregated lead plaintiff, or a justification for its extended leadership structure. Therefore, the Institutional Investor Group should not be appointed lead plaintiff as it is unable to fairly and adequately protect the interest of the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d at 435 (rejecting group as a lead plaintiff for failing to demonstrate it was cohesive or able to function as a unified entity); *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997) (Cederbaum, J.) (rejecting the appointment of an aggregated group of unrelated movants, the court noted that counsel "have not offered any reason for appointing an aggregation of unrelated institutional and individual investors as lead plaintiffs").[3]

---

[3] Activest is an overly active plaintiff, having moved 11 times in the past three years, appointed three times, with three motions pending. Activest seems to have lost track. It was appointed to serve as a lead plaintiff in *Baker v. MBNA Corp.*, No. 05-CV-0272, Dkt. No. 35 (D. Del. 2005), on October 13, 2005, 15 days prior to its

7

### C. The Institutional Investor Group Is a Prime Example of Lawyer Driven Litigation

The lead plaintiff provisions of the PSLRA arose out of Congressional concern, reflected in the House, Senate, and Conference Committee Reports, that some class action securities litigation had become "lawyer-driven," where law firms sought to bring cases and then sought out plaintiffs in whose names they could sue. In passing the PSLRA, Congress sought to "protect investors who join class actions against lawyer-driven lawsuits by giving control of the litigation to lead plaintiffs with substantial holdings of the securities of the issuer." (Conference Report on Securities Litigation Reform, H.R. Rep. No. 104-369, 32 (1995); accord S.Rep. 19180, 4 (Dec. 22, 1995) (Congress "intended . . . to empower investors so that they – not their lawyers – exercise primary control over private securities litigation), *id.* at 6, ("to transfer primary control of private securities litigation from lawyers to investors"), *id.* at 10, ("[t]he lead plaintiff should actively represent the class. The Committee believes that the lead plaintiff – not lawyers – should drive the litigation."). *See also Barnet v. Elan Corp., PLC*, 2005 U.S. Dist. LEXIS 16388, at *8 (citations omitted).

The Institutional Investor Group is precisely the type of attorney-driven group of unrelated entities that the PSLRA seeks to eliminate. Unlike Deka Investment GmbH and Deka International S.A., Luxembourg, which are subsidiaries of the same company and have a history of collaboration, the four members of the Institutional Investor Group have no association with one another and have presented no evidence of any prior working relationship. Furthermore, there is no indication of just how they came to move together to serve as lead plaintiff.

---

execution of its plaintiff's certification submitted in this action. Its plaintiff's certification nevertheless states that its lead plaintiff motion in *Baker* remains pending.

8

The Institutional Investor Group is an aggregation of four institutions related only by the desire of their attorneys to be lead counsel. Courts have refused to aggregate such unrelated entities in an effort to eliminate just such lawyer-driven litigation. *See Barnet v. Elan Corp.*, 2005 U.S. Dist. LEXIS 16388, at *10-11 ("by allowing unrelated groups to aggregate losses in an effort to generate the 'largest financial interest', the possibility emerges that lawyers will form such groups to manipulate the selection process, and in that way gain control of the litigation." (Citation omitted.)).

As this Court has previously found, one lead counsel is better than two. *See In re Nortel Networks Corp. Sec. Litig.*, Case No. 01 Civ. 1855 (RMB), 2002 WL 1492116 (S.D.N.Y. Feb. 4, 2002) (Berman, J.) ("The Court early on in this case took (and concludes again today) the position that one lead counsel would clearly have been most appropriate."). Such concerns are particularly present where the aggregation is not just the result a single firm's aggregation of its own clients' losses, but the result of agreements between independent firms, such as present here, that also lead to complications caused by co-lead counsel. Indeed, here there is no need for the Institutional Investor Group, but to advance the interests of its two law firms.

The appointment of Deka as lead plaintiff will ensure that the purpose of the PSLRA is fulfilled.

### III. Deka Has By Far the Largest Financial Interest

Considering the financial interest of the individual movants, as opposed to the collective losses of an artificially aggregated group, results in an outcome insuring that the movant with the largest individual financial interest, Deka in this instance, is appointed lead plaintiff.

> The "financial interest" of any given class member is typically calculated in one of four ways: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, [229 F.R.D. at 404] (quoting *Lax v. First Merchants Acceptance Corp.*, 1997 U.S.

9

Dist. LEXIS 11866, at *17, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997));
*The Constance Sczesny Trust [v. KPMG LLP, et al.]*, 223 F.R.D. [319,] 323
[(S.D.N.Y. 2004) (Stein, J.)]; *Ferrari [v. Impath, Inc.]*, [,] 2004 WL 1637053, at
*4 [(S.D.N.Y. July 20, 2004)].

*Barnet v. Elan Corp.*, 2005 U.S. Dist. LEXIS 16388, at *8-9. By any method of calculation, Deka has the largest financial interest. Deka, therefore, is the presumptively most adequate plaintiff to represent the class.

As set forth below, Deka has by far the largest financial interest of any other individual movant in this case. In fact, Deka's loss represents over 83% of the <u>entire</u> Institutional Investor Group's four unrelated entity-aggregated financial interest and is nearly double that of the member of the Institutional Investor Group who has its largest financial interest, Mississippi PERS. Deka's losses, as compared with the losses of each of the entities comprising the Institutional Investor Group, are as follows:

| Name | Loss |
|---|---|
| **Deka** | $23,449,815.49 |
| **Institutional Investor Group** | |
| Mississippi PERS | $12,886,303.25 |
| Erste-Sparinvest KAG | $7,051,673.58 |
| Fortis | $4,219,472.42 |
| Activest | $3,995,375.15 |

A more complete analysis of the LAX Factors is shown below. As can be seen, Deka has a greater financial interest in the litigation than any other individual movant. Indeed, Deka has a greater financial interest than the entire Institutional Investor Group for three of the four Lax Factors for the common stock purchases. As for bond purchases, no court has applied the Lax Factors to bond losses in a reported opinion. Deka has done so here to assist the Court. An analysis of the bond factors shown below demonstrates that Deka, again, has the largest financial interest in the litigation.

10

| LAX FACTORS ANALYSIS |||||| 
|---|---|---|---|---|---|
| **STOCK ANALYSIS** |||||| 
| Movant | # Shares Purchased | # Shares Sold | Net Shares Purchased | Net Expenditure | Approximate Loss |
| Deka | 1,154,145 | 821,274 | 332,871 | $19,126,730.07 | $9,232,315.05 |
| Mississippi PERS | 650,950 | 541,400 | 109,550 | $11,246,697.03 | $12,214,706.16 |
| Erste-Sparinvest KAG | 137,739 | 63,700 | 74,039 | $2,594,490.98 | $1,590,960.80 |
| Activest | 165,750 | 208,715 | -42,965 | $76,284.90 | $3,634,917.90 |
| Fortis | 11,531 | 4,100 | 7,431 | $359,314.82 | $188,080.06 |
| **BOND ANALYSIS** |||||| 
|  | Face Value of Bonds Purchased | Face Value of Bonds Sold | Net Face Value of Bonds Purchased | Net Expenditure | Approximate Loss |
| Deka | $85,345,000 | $80,695,000 | $4,650,000 | $14,849,816.52 | $14,217,500.44 |
| Mississippi PERS | $9,258,000 | $11,258,000 | -$2,000,000 | -$1,435,402.91 | $857,103.13 |
| Erste-Sparinvest KAG | $92,000,000 | $92,000,000 | $0 | $5,460,712.78 | $5,460,712.78 |
| Activest | $6,300,000 | $5,330,000 | $970,000 | $481,045.20 | $360,465.90 |
| Fortis | $116,238,000 | $115,988,000 | $250,000 | $4,104,681.83 | $5,283,258.80 |
| **STOCK AND BOND LOSSES COMBINED** |||||| 
| Movant | Deka | Mississippi PERS | Erste-Sparinvest KAG | Activest | Fortis |
| Net Expenditure | $33,976,547.60 | $9,811,294.12 | $8,055,203.76 | $557,330.10 | $4,463,996.65 |
| Approximate Loss | $23,449,815.49 | $12,886,303.25 | $7,051,673.58 | $3,995,375.15 | $4,219,472.42 |

## CONCLUSION

For all the foregoing reasons, Deka requests that the Court (i) appoint it as Lead Plaintiff in the Consolidated Action; (ii) approve its selection of Murray Frank as Lead Counsel; and (iii) grant such other relief as the Court may deem just and proper.

Dated: December 2, 2005            **MURRAY, FRANK & SAILER LLP**

By:    s/Eric J. Belfi
      Eric J. Belfi (EB-8895)
      Marvin L. Frank (ML-1436)
      Christopher Hinton (CH-0759)
275 Madison Avenue, 8th Floor
New York, NY 10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892
**[Proposed] Lead Counsel**

**TILP PLLC**
Alexander Reus (AR-4674)
100 SE Second Street, Suite 2610
Miami, Florida 33131
Telephone: (786) 235-5000
Facsimile: (786) 235-5005

**Additional Counsel for Plaintiff**

12